# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

SARAH WEST, AUSRA WEST,
and JAMES WEST,

            CV 10-132-M-DWM-JCL

      Plaintiffs,

            ORDER, and
    vs.           FINDINGS AND
            RECOMMENDATION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, and
JOHN DOES A, B, and C,

      Defendants.

This matter is before the Court on three motions to dismiss of Defendant

State Farm Mutual Automobile Insurance Company (State Farm) for which the

undersigned recommends the following dispositions:

 (1) State Farm's motion to dismiss for lack of subject matter jurisdiction
    under Fed. R. Civ. P. 12(b)(1) should be DENIED;

 (2) State Farm's motion to dismiss for failure to state a claim for relief
    under Fed. R. Civ. P. 12(b)(6) — res judicata, collateral estoppel,
    statutory exclusivity, and litigation conduct — should be GRANTED;
    and

 (3) State Farm's motion to dismiss for failure to state a claim under Fed.
    R. Civ. P. 12(b)(6) - statute of limitations — should be DENIED.

This matter is also before the Court on the following motions of the Wests all of which are DENIED:

(1)     a renewed request for disqualification;

(2)     Motion to Compel;

(3)     Motion to Stay Rulings on State Farm's Motions to Dismiss Pending Resolution of Their Motion to Compel; and

(4)     Motion to Amend Complaint.

## I.  Disqualification

On March 18, 2011, the Wests moved for disqualification of the undersigned United States Magistrate Judge under authority of 28 U.S.C. § 455(a). I considered the grounds asserted by the Wests for disqualification and found no objective basis on which a reasonable person could conclude that my impartiality in this case might be questioned.  Consequently, by Order entered March 23, 2011, I denied the Wests' motion.

In their briefs submitted in response to State Farm's motions to dismiss, the Wests renew their contention that I should be disqualified from presiding over this action.  This renewed request is based on the same grounds for disqualification asserted in their prior motion of March 18, 2011.  Therefore, for the reasons stated in the March 23, 2011 Order, incorporated herein by reference, IT IS ORDERED

that the Wests' second request for disqualification is DENIED to the extent it is based on 28 U.S.C. § 455(a).

The Court does note, however, that Sarah West, Ausra West, and James West each submitted an affidavit in conjunction with their renewed argument for disqualification. Dkt. # 42-1. They also have filed two unsigned "affidavits" — one identified as counsel Tina Morin's, and one identified as Michael Arseneau's. Dkt. #s 42-3 and 42-4. Accordingly, the Court deems it appropriate to also consider the Wests' renewed request for disqualification as an unarticulated attempt to invoke 28 U.S.C. § 144.[1]

Section 144 requires a party seeking the disqualification of a judge to submit an affidavit identifying a personal bias or prejudice that the judge has against the movant or in favor of any adverse party. 28 U.S.C. § 144. Section 144, however, also requires that the affidavit "be accompanied by a certificate of counsel of record stating that it is made in good faith."

Proper certification is a vital and significant requirement of section 144. *Brotherhood of Locomotive Firemen and Enginemen v. Bangor & Aroostook Railroad Co.*, 380 F.2d 570, 578 (D.C. Cir. 1967), cert. denied 389 U.S. 327

---

[1]The Court assumes, without deciding, that section 144 applies to magistrate judges and not only to district judges as its terms suggest.

(1967).  And where proper certification is absent, a motion to disqualify is properly denied as deficient.  *See Morrison v. United States*, 432 F.2d 1227, 1229 (5th Cir. 1970), cert. denied 401 U.S. 945 (1971).

The issue of the sufficiency of the Wests' affidavits aside, the Wests have failed to accompany their affidavits with a certification of counsel of record.  This failure alone mandates denial of their request to the extent it is made under section 144.

## II.  State Farm's Motions to Dismiss

### A.  Background

On January 15, 2004, Sarah West was stopped at a red light when her vehicle was rear-ended by a vehicle operated by Josh Johnson.  As a result, Sarah made a claim against Johnson and his motor vehicle liability insurance carrier for personal injuries she sustained from the collision.  Johnson's insurance company paid Sarah the liability limits of Johnson's policy.

The vehicle Sarah was operating at the time of the collision was owned by her parents, James and Ausra West, and insured under a motor vehicle insurance policy issued by State Farm.  Asserting she was not fully compensated for her injuries, Sarah made a claim to State Farm for both medical and underinsured

motorist benefits under the policy.  State Farm paid Sarah $20,000 in medical

payment benefits under the policy, but denied all other claims for benefits.

## 1.      State Court Action

James, Ausra, and Sarah West commenced an action against State Farm to

recover medical payments and underinsured motorist benefits relative to the

January 15, 2004 collision.  That action, captioned as *West v. State Farm Mutual*

*Automobile Insurance Company*, DV-07-330, was filed in the Montana Twenty-

First Judicial District Court, Ravalli County in 2007 (*West I*).

On August 5, 2008, the Wests filed an Amended Complaint in *West I* that

advanced the following claims for relief:

(1)     Count One:  Breach of Contract;

(2)     Count Two:  Violation of the Montana Unfair Trade Practices Act
        (UTPA) at Mont. Code Ann. §§ 33-18-201 and 242;

(3)     Count Three:  Tortious Breach of the Implied Covenant of Good
        Faith and Fair Dealing; and

(4)     Count Four:  Punitive Damages.

On April 27, 2009, the Wests moved to bifurcate — for purposes of trial —

the breach of contract claim (Count One) from the UTPA (Count Two) and

punitive damages claims (Count Four).  And the Wests requested that proceedings

on Counts Two, Three and Four be stayed pending resolution of the breach of

contract claim (Count One). On June 5, 2009, the parties stipulated to the

bifurcation and stay as requested by the Wests.

Consistent with the parties' stipulation, the court entered an order on June 9,

2009, stating as follows:

> A revised Scheduling Order shall be requested by Plaintiffs in relation to
> Counts Two and Four, if they desire, following the settlement or entry of a
> final judgment on Count One. Plaintiffs shall make such request within 60
> days of the settlement or final judgment on Count One or the case (Counts
> Two and Four) shall be dismissed with prejudice[.]

Dkt. # 49-4 at 2.[2]

A jury trial upon the breach of contract claim was set to commence on

October 1, 2010. On August 25, 2010, one day before the final pretrial conference

was set to convene, the Wests moved to dismiss, without prejudice, the breach of

contract claim.

The Wests argued that State Farm's refusal to pay medical and underinsured

motorist benefits to the Wests left them "financially crippled." And they

elaborated that State Farm had leveraged them into their state of financial ruin, and

rendered the Wests financially unable to proceed with the litigation and unable to

"fund" two lawsuits. Therefore, the Wests requested that they be permitted to

---

[2]Consistent with the parties' stipulation, the order also dismissed Count Three
of the Wests' Amended Complaint (tortious breach of the implied covenant of
good faith and fair dealing) with prejudice.

proceed only with the litigation of their UTPA claims. State Farm opposed a dismissal of Count One without prejudice.

On September 2, 2010, the state court issued an order denying the Wests' motion requesting dismissal of Count One without prejudice. And the court maintained the October 1, 2010 jury trial.

On September 8, 2010, the parties filed a stipulation for dismissal of Count One with prejudice signed by attorney Tracey Morin on behalf of the Wests, and by attorney Matthew Hayhurst on behalf of State Farm. Following the parties' stipulation, the court entered its order dismissing Count One with prejudice and vacated the October 1, 2010 jury trial.

By order entered October 7, 2010, the court entered final judgment with respect to the Wests' breach of contract claim (Count One). But, the court directed that the entry of judgment did not serve to certify the judgment for immediate appeal under Mont. R. Civ. P. 54(b).

On January 5, 2011, State Farm moved for dismissal of the Wests' Counts Two and Four.[3] State Farm based its motion upon the fact the Wests had failed to request a revised scheduling order for the disposition of those Counts as required

---

[3]In the interim, the Wests had filed their Complaint with this Court on November 29, 2010.

under the terms of the June 9, 2009 order of bifurcation. The Wests did not file a response to the motion. *See* Dkt. # 49-16 at 7.

On January 24, 2011, the court issued an order dismissing Counts Two and Four of the Wests' amended complaint. The court recognized that Count One had been dismissed with prejudice on September 8, 2010, with judgment on Count One being entered October 7, 2010, but that the Wests had failed to request a revised scheduling order with respect to Counts Two and Four "within 60 days of the settlement or final judgment on Count One" as required by the June 9, 2009 order of bifurcation. Consequently, the court dismissed Counts Two and Four with prejudice, and the court entered final judgment with respect to those counts. The court further ordered that the entire case was dismissed with prejudice.

State Farm served a notice of entry of judgment on the Wests on January 31, 2011, and filed the notice on February 1, 2011. In accordance with Mont. R. App. P. 4(5)(a)(i) the 30-day period of time within which the Wests could appeal the January 24, 2011 final judgment began to run on January 31, 2011.[4] That 30-day period expired on March 2, 2011, but the record reflects that the Wests did not appeal the final judgment.

_____

[4]Rule 4(5)(a)(i) provides that where a notice of entry of judgment is filed, the time for appeal "shall not begin to run until service of the notice of entry of judgment[.]"

On March 4, 2011, the Wests filed a post-judgment motion seeking the court's reconsideration of the final disposition of that case.[5] The certified copy of the Case Register Report (docket sheet) from *West I* reflects the following documents were filed relative to that motion: (1) on March 17, 2011, State Farm filed a response to the motion, (2) on March 18, 2011, the Wests filed a document titled "Plaintiffs' Rule 30(b)(6) Request is Based Upon New Information and Fraud Upon This Court by Defendant State Farm," and (3) on March 30, 2011, State Farm filed a response to the Wests' "Rule 30(b)(6)" document.

On April 29, 2011, the court issued an order with respect to the Wests' above-referenced motion for reconsideration or post-judgment relief. After noting various procedural defects and irregularities in the Wests' motions, the court treated the request as a motion for relief from judgment filed pursuant to Mont. R. Civ. P. 60(b)(6),[6] and proceeded to consider the merits of the motion.

---

[5]The parties have not provided the Court with a copy of the Wests' motion for reconsideration.

[6]Rule 60(b) provides, in relevant part, as follows:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic),

The Wests advanced numerous grounds in support of their post-judgment request for relief which the court addressed each in turn. First, the court noted the Wests complained that State Farm had "withheld notice of its Motion to Dismiss from the Plaintiffs until after [the court] agreed to dismiss[.]" Dkt. # 49-16 at 15. Although the Wests did not clearly identify the motion to dismiss to which they referred, the court construed their argument as referring to State Farm's January 5, 2011 motion seeking dismissal of Counts Two and Four. In rejecting the Wests' argument, the court found the evidence of record, and State Farm's certificate of service attached to its motion sufficiently established that State Farm had served a copy of its January 5, 2011 motion to dismiss on the Wests. The court concluded the Wests had simply "slept upon their rights" by failing to respond to the motion.

The court then identified ten grounds for relief advanced by the Wests in their post-judgment motion. The court restated those grounds as follows:

---

misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time[.]

Mont. R. Civ. P. 60(b).

(1) State Farm violated the *Order of Bifurcation* because it "actively asserted its position on Counts Two and Four, in violation of the Stipulated Bifurcation;" (2) Plaintiffs were leveraged into an abeyance because of the terminal illness of Co-Counsel Meismer; (3) State Farm demanded that Plaintiffs dismiss Count One with prejudice; (4) the Garlington Firm participated in discussions on a motion with respect to Count One, violating the undefined "Abeyance Agreement;" (5) the Garlington Firm purposefully concealed from the Court its participation in Count One and deceived the Court with a request to dismiss Counts Two and Four; (6) State Farm did not tell the Court of their breach of the undefined Abeyance Agreement; (7) the Abeyance Agreement required the Plaintiff to revive their bad faith claim within 60 days of completion of the breach of contract claim; (8) Plaintiffs filed their federal bad faith claim within 60 days of the dismissal of Count One; (9) State Farm deceived this Court in not telling this Court that Plaintiffs did timely file their bad faith claims in federal Court; and (10) State Farm did not give Plaintiffs notice of the need to get new representation upon the death of Co-Counsel Meismer.

Dkt. # 49-16 at 15-16.

The court rejected all of the Wests' grounds for relief, and denied their post-judgment motion for relief. Specifically, with respect to the Wests' argument in item (3) above, the court found the record did not reflect that State Farm demanded that the Wests dismiss Count One. Rather, State Farm had simply opposed the Wests' motion seeking dismissal of Count One to the extent the Wests requested the dismissal be without prejudice. The court noted that the Wests were, at that time, otherwise free to proceed to trial on October 1, 2010, with respect to their claims in Count One. The court also found the Wests' previous assertion that they could not afford to prosecute two trials was

unsupported and unpersuasive.  The Wests' decision to commence litigation in federal court on the same case and controversy while the litigation in *West I* was still pending directly contradicted the Wests' argument that they lacked sufficient funds to prosecute two actions.

Pursuant to Mont. R. App. P. 4(5)(a)(i) the Wests had 30 days to appeal the April 29, 2011 order.  The record indicates the Wests did not appeal that order.

## 2.  **Federal Court Action**

The Wests filed their Complaint instituting this federal court action on November 29, 2010 — a point in time after entry of final judgment on Count One (breach of contract) in *West I*, but before the time for appealing the January 24, 2011 final judgment expired on March 2, 2011.  Thus, at the time this action was filed it ran parallel to *West I*.

The subject of the Wests' complaint in the present case is grounded on the same claims for underinsured motorist benefits — and State Farm's alleged mishandling of those claims — on which *West I* was predicated.  The Wests have, however, named Doe Defendants in this action — individuals responsible for the handling and evaluation of the Wests' insurance claims.

In their complaint the Wests advance the following seven causes of action against Defendants:

(1)     Count One:  Breach of Contract Against State Farm;

(2)     Count Two: Violation of Unfair Claims/Trade Practices Act Against State Farm;

(3)     Count Three:  Tortious Breach of Statutory Duties Against Defendants;

(4)     Count Four:  Constructive Fraud and Breach of Fiduciary Duties Against All Defendants;

(5)     Count Five:  Punitive Damages;

(6)     Count Six:  Negligent Infliction of Emotional Distress; and

(7)     Count Seven:  Intentional Infliction of Emotional Distress.

In Count One the Wests allege State Farm breached the insurance contract by failing to pay underinsured motorist benefits and medical payment benefits to the Wests.  The Wests also allege State Farm is liable for breach of contract for allegedly leveraging the Wests and forcing them to dismiss, with prejudice, their underinsured motorist claim (Count One) in *West I*.

In Counts Two and Three, the Wests identify specific provisions of the UTPA which they allege State Farm violated in its course of handling the Wests' insurance claims.  The Wests again allege Defendants inappropriately forced, and financially leveraged them to dismiss their contract claim in *West I*.  The Wests

further allege Defendants refused to depose "Plaintiff's" primary care provider, and they insisted on a painful independent medical exam.

The Wests allege in Count Four that Defendants are liable for breach of fiduciary duties they owed to the Wests with respect to their conduct in handling the Wests' insurance claims. The Wests allege that Defendants' breach of those duties constitutes actionable constructive fraud. They allege Defendants forced the Wests to initiate legal action to recover insurance benefits under the insurance policy, and forced the Wests to dismiss their breach of contract claim (Count One) in *West I*.

Counts Six and Seven advance claims for both negligent and intentional infliction of emotional distress, respectively. In support of the claims, the Wests allege Defendants bullied, harassed, and humiliated the Wests through their claims-handling conduct, their litigation tactics in *West I*, and their conduct during the Wests' depositions in *West I*.

B. **Applicable Law**

1. **Rule 12(b)(1) Motion to Dismiss**

A defendant can challenge the existence of jurisdiction in a motion to dismiss filed under Fed. R. Civ. P. 12(b)(1). A defendant may present the motion either as a facial challenge to the allegations of a pleading, or as a substantive

challenge to the facts underlying the allegations. *Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). A facial challenge is one which contends that the allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

The success of a facial challenge to jurisdiction depends on the allegations in the complaint, and does not involve the resolution of a factual dispute. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). When resolving a facial challenge, the court must assume the allegations in the complaint are true and "draw all reasonable inferences in [plaintiff's] favor." *Wolfe*, 392 F.3d at 362; *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005). The court may also consider undisputed facts in the record, *Gustafson v. Funkino*, 2010 WL 2507556, *4 (D. Hawaii 2010) (citations omitted), as well as "matters properly subject to judicial notice." *Colony Cove Properties, LLC v. City of Carson*, ___ F.3d ___, 2011 WL 1108226, *5 (9th Cir. 2011) (quotation and citation omitted). In this regard, Federal Rule of Evidence 201 permits a court to take judicial notice of the existence and terms of the judicial record of another court. *Wyatt v. Terhune*, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003), cert. denied 540 U.S. 810 (2003); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244,

248 (9th Cir. 1992). Thus, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone*, 373 F.3d at 1039.

## 2. Rule 12(b)(6) Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) permits a party to move for dismissal where the allegations of a pleading "fail[] to state a claim upon which relief can be granted." A cause of action may be dismissed under Rule 12(b)(6) either when it asserts a legal theory that is not cognizable as a matter of law, or if it fails to allege sufficient facts to support an otherwise cognizable legal claim. *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). In addressing a Rule 12(b)(6) challenge the court accepts all factual allegations in the complaint as true (*Hospital Bldg. Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 740 (1976)), and construes the pleading in the light most favorable to the nonmoving party. *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989). However, the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Id*.

The court's review on a motion filed under Rule 12(b)(6) is generally limited to the matters set forth in the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). Ordinarily, "if matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

The Rule 12(b)(6) standards for review, however, permit the court to consider certain limited materials beyond the face of the complaint without converting the motion into one for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The court may review "matters properly subject to judicial notice." *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold and Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1096 (9th Cir. 2008) (quoting *Outdoor Media Group,*

17

*Inc. v. City of Beaumont*, 506 F.3d 895, 899-900 (9th Cir. 2007)).  Specifically, under Rule 12(b)(6) — in conjunction with Fed. R. Evid. 201 — the court may take judicial notice of court records and proceedings in a prior state court action when considering what preclusive effect that prior action is to be given in federal court.  *Intri-Plex Technologies, Inc. v. The Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

### 3.    Application of Montana Law

Because jurisdiction over this action is founded upon diversity of citizenship under 28 U.S.C. § 1332(a), the Court applies the substantive law of Montana, the forum state.  *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

### C.  Subject Matter Jurisdiction - *Rooker-Feldman*

State Farm moves for dismissal of Counts One (breach of contract), Two (UTPA violations), Three (tortious breach of UTPA), and Four (constructive fraud/breach of fiduciary duties) of the Wests' Complaint pursuant to the *Rooker-Feldman* doctrine.  As explained below, the doctrine is in applicable under the circumstances of this case.  Rather, State Farm's challenge to the Wests' prosecution of the referenced claims is properly analyzed under the interjurisdictional preclusion rule of 28 U.S.C. § 1738.

The *Rooker-Feldman* doctrine, which derives its name from two United States Supreme Court Cases – *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) – "stands for the relatively straightforward principle that federal district courts do not have jurisdiction to hear de facto appeals from state court judgments." *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010); *Henrichs v. Valley View Development*, 474 F.3d 609, 613 (9th Cir. 2007) (noting that the doctrine bars "appellate review over final state court judgments"). When a case is a forbidden "de facto appeal" the district court also lacks jurisdiction over all issues which are "inextricably intertwined" with an issue resolved by the predicate decision of the state court. *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003).

Noting that the lower federal courts have often misapplied the *Rooker-Feldman* doctrine, the Supreme Court has emphasized the doctrine occupies "narrow ground" and has limited applicability. *Skinner v. Switzer*, __ U.S. __, 131 S. Ct. 1289, 1297 (2011) and *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). The doctrine will apply only where the judgment entered in the related state court action has become final and immediately "subject to review" on appeal in the state courts. *H.C.* v. *Koppel*, 203 F.3d 610, 612 (9th Cir. 2000); *See also Henrichs*, 474 F.3d at 613 (the doctrine deprives the court of

jurisdiction only where the plaintiff seeks review of a "final state court judgment"). Consequently, *Rooker-Feldman* is inapplicable where the federal action relates only to an interlocutory order entered in a state court matter, unless the federal court is "asked to review a final state judgment of an order of an interlocutory nature." *H.C.,* 203 F.3d at 613. The doctrine is "confined" to cases where "state-court losers are complaining of injuries caused by state-court judgments rendered <u>before</u> the district court proceedings commenced and inviting district court review and rejection of those judgment." *Exxon Mobil*, 544 U.S. at 284 (emphasis added).

Thus, where the federal action is commenced prior to the entry of a judgment in a parallel state court action, "*Rooker-Feldman* is not triggered simply by the entry of judgment in state court." *Exxon Mobil*, 544 U.S. at 292. "[N]either *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches a judgment on the same or related question while the case remains *sub judice* in a federal court." *Id.* Rather, the "disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law." *Id.* at 293.

State Farm contends that the form of decision entered by the state court in *West I* on October 7, 2010 – titled "Order Granting Motion for Entry of Final

Judgment as to Count One [Breach of Contract] Only, and Entry of Judgment" –
constituted a final judgment entered prior to the commencement of this action on
November 29, 2010, compelling application of *Rooker-Feldman*. From this
premise, State Farm argues that Counts Two (UTPA violations), Three (tortious
breach of UTPA), and Four (constructive fraud/breach of fiduciary duties) of the
Wests' Complaint in this action must also be dismissed because they are
"inextricably intertwined" with the Wests' forbidden de facto appeal of the state
court judgment upon Count One (breach of contract). The problem with State
Farm's position is that the form of decision entered by the state court on October
7, 2010, did not – despite its language – constitute a final judgment under
Montana law.

Montana law recognizes that "[a] final judgment is one wherein a final
determination of the rights of the parties has been made; any decree which leaves
matters undetermined is interlocutory in nature and not a final judgment for
purposes of appeal." *In the Matter of Litigation Relating to the Riot of September
22, 1991, at the Maximum Security Unit of the Montana State Prison*, 939 P.2d
1013, 1015-16 (Mont. 1997). A state court's adjudication of less than all of the
claims advanced in a multiple-claim or multiple-party action does not constitute a

final judgment, and is not subject to appeal. *Roy v. Neibauer*, 610 P.2d 1185, 1188 (Mont. 1980).

Montana Rule of Civil Procedure 54(b) provides in relevant part:

When multiple claims for relief ...are involved in an action, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims...shall not terminate the action as to any of the claims....and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims. ....

Absent the appropriate Rule 54(b) certification, a district court's order rendering a partial adjudication of multiple claims is interlocutory in nature, is not final, and is not appealable. *Trombley v. Mann*, 30 P.3d 355, 357 (Mont. 2001); *White v. Lobdell*, 678 P.2d 637, 640-41 (Mont. 1984).

At the time the October 7, 2010 order and "final judgment" was entered in the state court action, the Wests' claims for violation of the UTPA (Count Two) and punitive damages (Count Four) remained pending in accordance with the order of bifurcation that had been entered on June 9, 2009. Dkt. # 49-4. In that regard, the October 7, 2010 order and "final judgment" expressly stated:

IT IS FURTHER ORDERED that entry of final judgment on Count One shall <u>not</u> serve to certify this or any other order for immediate appeal under Mont. R. Civ. P. 54(b).

Dkt. # 49-11 (emphasis in original).  Final judgment in favor of State Farm

dismissing all of the claims advanced in *West I* was not entered until January 24,

2011.  Dkt. # 49-12; Dkt. # 49-17, at 7.  Because the present action was filed

before entry of final judgment in *West I*, *Rooker-Feldman* is inapplicable.

### D. <u>Preclusion</u>

The Court turns to address State Farm's argument that the judgment entered

by the state court in *West I* operates to preclude the Wests from prosecuting the

claims advanced in this action.

It is well-established that a federal court must give a state court judgment

the same preclusive effect that the judgment would be given by the courts of the

State in which the judgment was rendered.  *Allen v. McCurry*, 449 U.S. 90, 96

(1980); *Mack v. Kuckenmeister, CPA, MST*, 619 F.3d 1010, 1016 (9th Cir. 2010).

This rule of interjurisdictional preclusion arises from the provisions of 28 U.S.C. §

1738 which state, in relevant part, as follows:

> [J]udicial proceedings [...] shall have the same full faith and credit in every
> court within the United States [...] as they have by law or usage in the courts
> of such State [...] from which they are taken.

28 U.S.C. § 1738.  *See Noel v. Hall*, 341 F.3d 1148, 1159 (9th Cir. 2003).  Thus, in

considering the preclusive effect of a state court judgment, section 1738 requires

federal courts to apply the law of res judicata and collateral estoppel as adopted by

the State from which the subject judgment emerged. *Adam Bros. Farming, Inc. v. County of Santa Barbara*, 604 F.3d 1142, 1148 (9th Cir. 2010) (res judicata) and *Engquist v. Oregon Dept. of Agriculture*, 478 F.3d 985, 1007 (9th Cir. 2007) (collateral estoppel). Application of the doctrines of res judicata and collateral estoppel as adopted in Montana to the circumstances of this case requires dismissal.

### 1. <u>Res Judicata</u>

Under Montana law, the doctrine of res judicata bars a party from re-litigating "a claim once a final judgment has been entered." *Wiser v. Montana Board of Dentistry*, 251 P.3d 675, ___, 2011 WL 1134659, *2 (Mont. 2011) (quotation and citation omitted). When a party has had the opportunity to litigate a case to conclusion, res judicata prohibits the party from re-litigating the same matter. *Id*. "The doctrine is premised on the policy that there must be some end to litigation." *Id*.

As a threshold matter, res judicata applies only when a final judgment has been entered in prior litigation between the parties. *Wiser*, 251 P.3d at ___, 2011 WL 1134659 at *2. The Court finds this condition is satisfied under the circumstances of this case.

Here, the Court concludes a final judgment was entered with respect to the Wests' causes of action advanced in *West I*. The state court's January 24, 2011 order dismissed Counts Two (UTPA) and Four (punitive damages), and entered final judgment on those counts. The state court further recognized that Count One (breach of contract) had been dismissed on September 8, 2010, that a final judgment dismissing Count One was entered on October 7, 2010, and that all other Counts of the Wests' Amended Complaint had been dismissed. Consequently, by its order entered January 24, 2011, the state court dismissed the entire *West I* action with prejudice. Dkt. # 49-12 at 2.

On February 1, 2011, State Farm filed a Notice of Entry of Judgment in *West I* based on the state court's dismissal of the entire action. State Farm served a copy of the Notice on the Wests by mail on January 31, 2011, as required under Mont. R. Civ. P. 77(d). Pursuant to Mont. R. App. P. 4(5)(a)(i), the Wests had 30 days from State Farm's service of the Notice of Entry of Judgment within which to file a notice of appeal in *West I*. The last day of the referenced 30-day period was March 2, 2011. *See* Mont. R. App. P. 3.

The Wests did not file a notice of appeal in *West I*. Consequently, the district court's January 24, 2011 order dismissing the entire action became final for purposes of res judicata when the time for filing a notice of appeal expired on

March 2, 2011. *In re Marriage of Schoenthal*, 106 P.3d 1162, 1165 (Mont. 2005). *See also Wiser*, 251 P.3d at __, 2011 WL 1134659 at *3 (noting that a portion of the district court's ruling was not challenged on appeal and, therefore, was final for purposes of res judicata).

On March 4, 2011, after the appeal deadline passed, the Wests filed their post-judgment request for relief which the state court construed as a motion filed under Mont. R. Civ. P. 60(b)(6). Motions under Rule 60(b), however, do not extend the time within which a party may file a notice of appeal. *Flesch v. McDonald's Restaurant*, 121 P.3d 527, 530 (Mont. 2005). Thus, the Wests' Rule 60(b)(6) motion did not affect the finality of the state court's January 24, 2011 order and judgment. *Id*.

Once a final judgment has been entered between parties in a parallel action, res judicata bars the parties to that action from advancing further claims against each other in a subsequent action where the following elements of the doctrine are satisfied:

> (1) the parties or their privies are the same; (2) the subject matter of the present and past actions is the same; (3) the issues are the same and relate to the same subject matter; and (4) the capacities of the parties are the same to the subject matter and issues between them.

*Wiser*, 251 P.3d at __, 2011 WL 1134659 at *2.  The Court concludes these elements are satisfied in this case to the extent described below.

### a.     <u>Same Parties</u>

The parties to this case — the Wests and State Farm — are the same parties involved in *West I*.  Although the Wests have attempted to name John Does A, B, and C as new defendants in this case, generally "the addition of new defendants in a subsequent action does not affect the preclusive affect of the judgment as to the original parties."  *Manego v. Orleans Board of Trade*, 598 F. Supp. 231, 235 (D. Mass. 1984).  Consistent with the rule stated in *Manego*, the Montana Supreme Court has applied the doctrine of res judicata to bar claims in a subsequent action against a defendant who was a party to the original action even though the subsequent action involved additional defendants and John Doe defendants who were not parties to the original action, and who were not in privity with the defendant who qualified for the defense of res judicata.  *See Beasley v. Flathead County*, 206 P.3d 915, 917-18 (Mont. 2009).

### b.     <u>Same Subject Matter</u>

The subject matter of this action is the same as the subject matter of *West I*.  Both actions stem from, and pertain to the following:  (1) Sarah West's motor vehicle collision on January 15, 2004, (2) the Wests' claims against State Farm for

underinsured motorist coverage and medical payment benefits, and State Farm's alleged refusal to pay those claims, (3) State Farm's alleged improper conduct in handling the Wests' insurance claims, and (4) State Farm's alleged tortious conduct it committed during the course of the litigation in *West I*. Thus, these identical subject matters are sufficient to satisfy the second element of res judicata. *See State ex rel. Harlem Irrigation District v. Montana Seventeenth Judicial District Court*, 894 P.2d 943, 945 (Mont. 1995).

<strong>c.     <u>Same Issues Relating to the Same Subject Matter</u></strong>

The same issues relating to the same subject matter arose in both this case and in *West I*. In both cases the Wests advanced identical causes of action against State Farm as follows: (1) breach of contract for failing to pay underinsured motorist and medical pay benefits allegedly due to the Wests under the same automobile insurance policy at issue in both cases, (2) bad faith and violations of the UTPA with respect to the manner in which State Farm handled the Wests' insurance claims, and (3) punitive damages based on State Farm's alleged malicious conduct it committed towards the Wests during the course of its conduct in handling their insurance claims. These identically pled legal claims for relief stem from the same subject matter and render res judicata applicable in this action.

*See Wiser*, 251 P.3d at ___, 2011 WL 1134659 at \*4 (finding identity of facts and issues which related to the same subject matter).

The Wests' Complaint filed in this action, however, also advances legal causes of action which were not expressly pled in their Amended Complaint filed on August 5, 2008, in *West I*. Specifically, their Complaint here includes new legal claims for: (1) Tortious Breach of Statutory Duties (Count Three); and (2) Constructive Fraud and Breach of Fiduciary Duties (Count Four). The facts alleged in support of these causes of action include some of the same facts alleged in *West I* regarding State Farm's alleged misconduct in handling the Wests' insurance claims and its litigation conduct in *West I*. Despite the fact these claims were not expressly pled in *West I*, they are nevertheless barred by res judicata.

Because res judicata operates to bar claims that a party already had an "opportunity" to litigate, the doctrine "bars not only issues that were actually litigated, but also those that *could have* been litigated in a prior proceeding." *Wiser*, 251 P.3d at ___, 2011 WL 1134659 at \*4 (emphasis in original) (quoting *State ex rel. Harlem Irrigation District v. Montana Seventeenth Judicial District Court*, 894 P.2d 943, 946 (Mont. 1995)). Thus, for purposes of res judicata, finality is accorded to a judgment entered "as to all issues which could have been properly raised irrespective of whether the particular matter was in fact litigated."

29

*Hall v. Heckerman*, 15 P.3d 869, 872 (Mont. 2000) (citation and quotation omitted).

The "new" causes of action advanced by the Wests in this case arise from the same subject matter as that which was involved in *West I*. Thus, those claims constitute claims and issues which could have been litigated in *West I*, and are barred in this action by res judicata.

### d. Same Capacities of the Parties

The parties' capacities in this action are identical to the capacities of the parties in *West I*. In both cases, the Wests sued State Farm in their individual capacities as insureds under the automobile insurance policy issued by State Farm. Also, in both cases the Wests sued State Farm in its capacity as their insurance carrier/insurer with respect to the automobile insurance policy at issue in both cases, and with respect to its claims-handling conduct governed by provisions of Montana law, including the UTPA. Where a plaintiff litigates "identical claims, in an identical capacity, against the same defendant[,]" the final element of res judicata is satisfied. *Wiser*, 251 P.3d at ___, 2011 WL 1134659 at *4.

Because a final judgment was entered in *West I*, and because the four elements of res judicata are satisfied in this case, the doctrine bars the Wests'

claims to the extent described above. State Farm's motion should be granted in this respect.

## 2. <u>Collateral Estoppel</u>

Under Montana law, the doctrine of collateral estoppel similarly "embod[ies] a judicial policy that favors a definite end to litigation[.]" *Baltrusch v. Baltrusch*, 130 P.3d 1267, 1273 (Mont. 2006). Collateral estoppel bars serial litigation "of an issue that has been litigated and determined in a prior suit." *Id*. *See also McDaniel v. State*, 208 P.3d 817, 825 (Mont. 2009).[7]

In Montana, the courts apply the following four-part test to determine whether collateral estoppel bars the relitigation of a particular issue:

1. Was the issue decided in the prior adjudication identical to the issue raised in the action in question?

2. Was there a final judgment on the merits in the prior adjudication?

3. Was the party against whom preclusion is now asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom preclusion is now asserted afforded a full and fair opportunity to litigate the issue which may be barred?

---

[7]For clarity, the Montana Supreme Court has employed "the terms 'claim preclusion' and 'issue preclusion' in lieu of 'res judicata' and 'collateral estoppel,' respectively." *McDaniel v. State*, 208 P.3d 817, 825 n.2 (Mont. 2009).

*McDaniel v. State*, 208 P.3d 817, 825-826 (Mont. 2009). All four elements must be met before collateral estoppel may be invoked. *Id.*, 208 P.3d at 826.

### a.  Identical Issues

To determine whether issues raised in a subsequent action are identical to issues resolved in a prior adjudication the courts "compare the pleadings, evidence and circumstances surrounding the two actions." *Baltrusch*, 130 P.3d at 1276 (quotation and citation omitted). The scope of the issues that are barred extends not only to all matters that were actually resolved in a prior adjudication, but also to issues and facts that were essential to, "or necessarily decided in a prior action." *Id*. Furthermore, issues that a party simply reframes and recharacterizes as "new" may, nonetheless, be sufficiently "related to the subject matter and relevant to the issues that were litigated and adjudicated previously" so that the "new issues" "could have been raised" in the prior action and are barred by collateral estoppel "despite the fact that [they were] not in fact expressly pleaded or otherwise urged." *Id*. (citation and quotation omitted). Even though a particular subsequent issue may not be identical to a previously resolved matter, it may be so intertwined with the prior issue that the court would have to rehear the prior issue to resolve the subsequent issue. *Id*., 130 P.3d at 1277. Such matters are barred by collateral estoppel. *Id*.

The Wests' Complaint in this action advances claims for relief premised upon predicate facts and issues that were not expressly pled in their August 5, 2008 Amended Complaint filed in *West I*. Two of those factual issues are as follows: (1) State Farm allegedly forced and "financially leveraged" the Wests to dismiss, with prejudice, Count One (breach of contract) in *West I*; and (2) State Farm allegedly subjected the Wests to a painful independent medical exam. In this case, the Wests assert these issues as predicate facts in support of their causes of action for Breach of Contract (Count One), Tortious Breach of Statutory Duties (Count Three), and Constructive Fraud and Breach of Fiduciary Duties (Count Four).

With respect to the issue of the dismissal of Count One in *West I*, the state court directly addressed that issue in its order entered April 29, 2011, denying the Wests' Rule 60(b)(6) motion. The Wests argued there that "State Farm demanded that Plaintiffs dismiss Count One with prejudice[.]" Dkt. # 49-16 at 15. As noted above, the state court concluded that neither State Farm, nor financial reasons had forced the Wests into dismissing Count One with prejudice. That issue, therefore, is identical to the issue identified above which the Wests now advance in this case.

Collateral estoppel similarly operates to bar relitigation of the issue of the alleged painful independent medical exam. Here, the Wests allege in Count Three

that State Farm is liable for tortious breach of the UTPA based on its conduct in refusing to depose their primary care provider and instead insisting "on a painful Independent Medical Exam doing harm to" the Wests. Dkt. # 1 at 4. The Wests' UTPA claims in *West I* included an allegation that State Farm violated "one or more of the prohibit[ed] practices in M.C.A. [§] 33-18-201" based on its conduct in refusing to pay benefits to the Wests under the automobile insurance policy it issued to the Wests. Dkt. # 49-1 at 4. That conduct would necessarily include the referenced independent medical exam State Farm employed in conducting its "reasonable investigation" of the Wests' claims, and settling any of those "claims in which liability has become reasonably clear" as required under the UTPA at Mont. Code Ann. § 33-18-201(4) and (6). *See* Mont. Code Ann. § 33-18-242(1). The issue regarding the independent medical exam is so related to the subject matter in *West I*, and relevant to the issues adjudicated in *West I* that it could have been raised during the course of the litigation in *West I*. Furthermore, the issue is so intertwined with the Wests' prior UTPA claims that this Court would have to rehear the previously dismissed UTPA claims to resolve the reasonableness of State Farm's conduct relative to the independent medical exam.

### b.     **Finality of Prior Adjudication**

The independent medical exam issue is subject to collateral estoppel by virtue of the state court's January 24, 2011 order and judgment entered in *West I*. As discussed above, that disposition became final for purposes of collateral estoppel when the deadline for an appeal of that disposition expired on March 2, 2011.

The Court must also consider whether the state court's April 29, 2011 order is sufficiently final. The Court concludes that it is.

Montana law imposes a "relaxed requirement of finality for purposes of applying collateral estoppel." *Baltrusch*, 130 P.3d at 1275. To decide "whether to give preclusive effect to issues resolved in a judgment or order that has not been entered as final[,]" the state courts consider the following factors:

> (1) whether the prior decision was adequately deliberated and firm and not avowedly tentative;
>
> (2) whether the parties were fully heard;
>
> (3) whether the court supported its decision with a reasoned opinion; [and]
>
> (4) whether the court's prior decision was subject to appeal or was in fact reviewed on appeal.

*Baltrusch*, 130 P.3d at 1276.

Upon consideration of the foregoing factors, the state court's April 29, 2011 order qualifies as a final adjudication. The written ruling reflects an adequately deliberated and firm decision that is not avowedly tentative. The ruling is 19 pages in length, and it sets forth a rather detailed description of the procedural history of the case. The court painstakingly identified all of the Wests' arguments presented in their Rule 60(b)(6) motion, engaged in a deliberative analysis of those claims, and arrived at a reasoned decision as to the merits of those claims. The parties each filed two briefs relative to the motion and, thus, were fully heard on the matters. Finally, the state court's ruling on the Wests' Rule 60(b)(6) motion was subject to appeal to the Montana Supreme Court. *Flesch v. McDonald's Restaurant*, 121 P.3d 527, 530 (Mont. 2005). During the June 7, 2011 hearing in this matter, counsel for State Farm represented that the Wests did not file a notice of appeal with respect to the April 29, 2011 ruling. Absent an appeal, the ruling became final May 29, 2011, upon expiration of the 30-day period within which a notice of appeal had to be filed. *See In re Marriage of Schoenthal*, 106 P.3d at 1165 and *Wiser*, 251 P.3d at ___, 2011 WL 1134659 at *3.

### c.    Same Parties

As discussed above, the Wests were parties to the litigation in *West I*. This element of collateral estoppel is satisfied here.

36

### d.   Full and Fair Opportunity to Litigate

The party attempting to defeat a defense of collateral estoppel bears the burden of establishing "the absence of a full and fair opportunity to litigate." *McDaniel*, 208 P.3d at 829.  The mere fact that a party did not raise an issue in prior litigation "does not necessarily mean that the party has been denied a full and fair 'opportunity' to litigate the issue[.]"  *Id*.

Here, the Wests do not present any argument directed at the issue of whether, for purposes of collateral estoppel, they had a full and fair opportunity to litigate issues that they now raise in this case.  Nor do they identify any evidence relevant to this element of collateral estoppel.  Having failed to satisfy their burden, the Court cannot find that the Wests were denied a full and fair opportunity to litigate issues raised in this action.  *See Baltrusch*, 130 P.3d at 1278 (concluding that the party failed to meet its burden with respect to this element).

Based on the foregoing, all of the elements of collateral estoppel are satisfied in this case.  Consequently, the issues the Wests raise regarding State Farm's conduct in forcing them to dismiss Count One, and to undergo a painful independent medical exam are barred by collateral estoppel.  State Farm's motion should be granted in this respect.

### E.  **Statutory Exclusivity Under the UTPA**

State Farm moves to dismiss some of the Wests' claims as barred by restrictions imposed under the UTPA.  The UTPA limits the legal causes of action which an insured may bring against an insurer for damages caused by the insurer's handling of an insurance claim.  The relevant provision of the UTPA prescribes as follows:

> (3) An insured who has suffered damages as a result of the handling of an insurance claim may bring an action against the insurer for breach of the insurance contract, for fraud, or pursuant to this section, but not under any other theory or cause of action. An insured may not bring an action for bad faith in connection with the handling of an insurance claim.

Mont. Code Ann. § 33-18-242(3).

The Montana Supreme Court, construing the plain language of section 33-18-242(3), has strictly limited an insured's legal claims as directed in the statute. The claims available to an insured stemming from an insurer's handling of an insurance claim are only those causes of action recognized under the statute — breach of contract, fraud, or violations of the UTPA — and no other cause of action is permitted.  *Watters v. Guaranty National Insurance Co.*, 3 P.3d 626, 636 (Mont. 2000), overruled on other grounds *Shilhanek v. D-2 Trucking, Inc.*, 70 P.3d 721, 727 (Mont. 2003).  "An insured may not bring suit against an insurance company for claims arising out of 'the handling of an insurance claim,' unless the

claims are those set forth in sections [33-18-201 and 33-18-242(3)] of the UTPA."
*Burton v. State Farm Mutual Automobile Ins. Co.*, 30 M.F.R. 173, 182 (D. Mont.
2002). Other causes of action advanced by the insured are barred. *Id*., 30 M.F.R.
at 183.

The Wests' claims against State Farm in Counts Six and Seven of their
Complaint do not fall within those causes of action specified in Mont. Code Ann.
§ 33-18-242(3), and are barred as a matter of law. Counts Six and Seven plead
claims for negligent and intentional infliction of emotional distress, respectively.
Those claims are premised upon "Defendants'" conduct in evaluating the Wests'
insurance claims and failing to "effect a reasonably prompt settlement" of their
claims. Dkt. # 1 at 6. Specifically, the Wests allege Defendants "terrorized,"
"harass[ed]," "humiliat[ed]," and "bull[ied]," them during their depositions with
respect to the topic of some unspecified "unrelated prior childhood sexual abuse"
in an effort to dispute the cause of the Wests' damages which the Wests asserted
were caused by the subject motor vehicle collision. The Wests' claims allege that
Defendants' conduct in the depositions caused them to suffer extreme emotional
distress. Consequently, as pled, the Wests' claims in Counts Six and Seven seek
compensation for damages they suffered as a result of State Farm's conduct in

handling their insurance claims. Counts Six and Seven are barred by Mont. Code. Ann. § 33-18-242(3), and State Farm's motion should be granted in this respect.[8]

## III. Wests' Motion to Amend Complaint, Motion to Compel, and Motion to Stay

### A. Motion to Amend Complaint

In the wake of State Farm's motions seeking dismissal of this action, the Wests filed a motion on June 6, 2011, seeking leave to amend their Complaint. State Farm opposes the motion which State Farm characterizes as a futile attempt to raise matters that were resolved by the final judgment entered in *West I*. Having considered the parties' respective arguments, the Court concludes the motion to amend is properly denied.[9]

Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." A district court, however, has discretion to deny leave to amend

---

[8]To the extent State Farm's conduct as alleged in Counts Six and Seven caused emotional distress damages to the Wests, they could have pursued those claims for relief as an element of damages to be recovered at trial in *West I. See Lorang v. Fortis Ins. Co.*, 192 P.3d 186, 223-24 (Mont. 2008).

[9]The Wests filed their motion to amend more than 21 days after service of State Farm's Rule 12(b) motions on March 8, 2011. Consequently, the Wests must either obtain State Farm's consent to an amended pleading, "or the court's leave." Fed. R. Civ. P. 15(a)(2).

"due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.' "

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (citations omitted).

A proposed amended complaint is futile if it would be immediately "subject to dismissal." *Nordyke v. King*, ___ F.3d ___, 2011 WL 1632063, *9 n.12 (9th Cir. 2011) (citation omitted). The proper test for futility is "identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Id*. (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). Proposed amendments are futile if the claims would be barred by res judicata, collateral estoppel, or statutory preclusion. *See Russell v. United States Dept. of the Army*, 191 F.3d 1016, 1019-20 (9th Cir. 1999) (statutory preclusion); *Onkvisit v. Board of Trustees of California State University*, 2011 WL 2194018, *2 (N.D. Cal. 2011) (res judicata); and *Rainwater v. Banales*, 2008 WL 5233138, *9 n.6 (C.D. Cal. 2008) (collateral estoppel). A denial based on futility is appropriate if the pleading "would not be saved by any amendment." *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 893 (9th Cir. 2010) (citation and quotation omitted).

In considering whether an amendment is futile, the court looks only to the facts pled in the proposed amended pleading. *Nordyke v. King*, ___ F.3d ___, 2011 WL 1632063, *9 n.12 (9th Cir. 2011) (citing *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009)). Under Rule 12(b)(6), however, the court may also consider matters properly subject to judicial notice. The Court proceeds to discuss why each count of the Wests' proposed Amended Complaint would be subject to dismissal thereby rendering the proposed amendments futile.

### 1. Count One

Count One of the Wests' amended pleading is titled "Failure to Pay Medical Payment Benefits and Wage Loss While Liability Was Reasonably Clear and Plaintiffs' Damages Exceeded the Underlying Policy." In support of Count One the Wests allege they provided State Farm with proof of medical expenses, wage and economic losses, and other damages they sustained as a result of the underlying collision. And that State Farm either unreasonably refused to pay, or failed to timely pay the damages. The Wests assert State Farm's conduct violated the UTPA because State Farm: (1) failed to conduct a proper investigation, (2) failed to provide the Wests with a basis in law or in fact for its denial of the claims, and (3) failed to provide information, documentation, or medical evidence in support of its denial of the claims.

Count One is indistinguishable from the claims prosecuted in *West I*. As explained above, the doctrine of res judicata operates to bar the Wests from relitigating claims under the UTPA which were, or could have been advanced against State Farm in *West I*.

### 2. Count Two

Count Two of the Wests' amended pleading — titled "Failure to Investigate, Evaluate, and Attempt to Settle in a Reasonably Prompt Fashion" — merely elaborates upon the claims asserted in Count One: (1) State Farm had notice of the subject motor vehicle collision and Sarah West's settlement negotiations with Johnson and his insurance carrier; (2) State Farm had an opportunity to participate in those negotiations, but failed to do so; (3) Sarah West settled her claims with Johnson for his policy limits, but the Wests' medical expenses and economic losses exceeded those policy limits; (4) State Farm did not provide medical or economic testimony to rebut the Wests' losses; (5) State Farm knew Sarah was on public assistance; (6) State Farm refused to pay the Wests' "harms and losses"; and (7) State Farm improperly blamed the Wests' "harms and losses" on Sarah's parents and Sarah's "previous sexual assault."

The allegations again pertain to State Farm's conduct in handling the Wests' insurance claims and are barred by res judicata as UTPA claims that were, or could have been litigated in *West I*.

### 3. <u>Counts Three and Four</u>

The Wests again advance independent causes of action for both negligent and intentional infliction of emotional distress in Counts Three and Four, respectively. The claim for negligent infliction of emotional distress is predicated upon State Farm's: (1) refusal to pay the Wests' insurance claims; (2) conduct in handling the Wests' insurance claims; (3) conduct during the course of the litigation in *West I*; (3) its unspecified "collusion" directed at depriving the Wests of access to the courts; and (4) its conduct in this litigation, all in violation of the claims-handling standards set forth in the UTPA at Mont. Code Ann. § 33-18-201.

The Wests' claim for intentional infliction of emotional distress is premised upon State Farm's alleged failure to: (1) properly evaluate, litigate, and settle the Wests' insurance claims; (2) "disclose [the Wests'] full medical payment benefits"; and (3) conduct itself so as to avoid litigation and to avoid financially devastating the Wests.

All of the Wests' factual allegations pled in support of their negligent and intentional infliction of emotional distress claims stem from State Farm's conduct

44

in either handling the Wests' insurance claims, or in litigating *West I* and the present case. The Wests attempt to save Counts Three and Four from the preclusive reach of the *West I* judgment by characterizing State Farm's conduct as a continuing tort that lasted through the litigation of *West I* and continues in the present case.

It is true that Montana decisional law recognizes "that an insurer's duty to deal fairly and not to withhold payment of valid claims does not end when an insured files a complaint against the insurer." *Palmer v. Farmers Ins. Exchange*, 861 P.2d 859, 913 (Mont. 1993). "[T]he continuing duty of good faith can be breached by an insurer's postfiling conduct[,]" including the conduct of an insurer's attorneys defending the insurer in litigation. *Federated Mutual Ins. Co. v. Anderson*, 991 P.2d 915, 921 (Mont. 1999), abrogated on other grounds by *Citizens Awareness Network v. Montana Board of Environmental Review*, 227 P.3d 583, 587 n.2 (Mont. 2010). In rare situations, an insurer's postfiling litigation conduct can constitute "part of an unfair claim settlement practice" in support of a cognizable claim under the UTPA. *Federated Mutual Ins. Co.*, 991 P.2d at 922.

*Palmer* and *Federated Mutual*, however, are of no assistance to the Wests under the circumstances of this case. State Farm's handling of the underlying

insurance claims — including its litigation conduct in *West I* — are barred by the *West I* judgment.

The Wests' reliance upon State Farm's conduct in this litigation to support their claims of emotional distress is also misplaced. The judgment in *West I* resolved all breach of contract and UTPA claims related to the Wests' claims for underinsured motorist benefits emanating from the underlying collision. Thus, in defending against this action, State Farm owes no obligation to the Wests — at this juncture — that would serve as the basis for a claim for relief under the UTPA.

### 4.    <u>Count Five</u>

Count Five of the Wests' proposed amended pleading purports to state a cause of action for the "continuing tort of bad faith" based upon miscellaneous acts or omissions committed by State Farm in the course of handling the Wests' insurance claims and in litigating *West I*. The Wests do not identify the legal theory upon which they are basing Count Five. Construing the pleading in the light most favorable to the Wests, the Court views Count Five as an attempt to advance an independent cause of action under the UTPA as well as a cause of action for the tort of bad faith.

Montana law recognizes the common law duty of good faith and fair dealing, "commonly known as the tort of bad faith." *Thomas v. Northwestern National Ins. Co.*, 973 P.2d 804, 810 (Mont. 1998) (citing *Story v. City of Bozeman*, 791 P.2d 767, 773, 776 (Mont. 1990)). But, the UTPA at Mont. Code Ann. § 33-18-242(3) expressly states that "[a]n insured may not bring an action for bad faith in connection with the handling of an insurance claim." Consequently, the exclusive remedy provided under the UTPA bars an insured's common law bad faith claim against an insurer. *Watters v. Guaranty National Ins. Co.*, 3 P.3d 626, 636 (Mont. 2000), overruled on other grounds *Shilhanek v. D-2 Trucking, Inc.*, 70 P.3d 721, 725 (Mont. 2003). Therefore, to the extent Count Five is an attempt to advance a cause of action under the tort of bad faith, it is barred by the UTPA.

Alternatively, the Wests attempt to plead UTPA claims based on State Farm's conduct during the litigation of *West I* that could be cognizable under *Palmer* and *Federated Mutual*, supra. They refer to the following conduct: (1) unspecified "fraudulent activities" in *West I*;[10] (2) ex parte contact with the state court based on State Farm's presentation of "expert opinion testimony" and its

_____

[10]The Court addresses the issue of any alleged "fraudulent activities" in its discussion of Count Six of the Wests' proposed Amended Complaint.

failure to notify the Wests of motions; (3) State Farm's use of "previous sexual assault to emotionally disturb" the Wests; and (4) unspecified attacks on the Wests' counsel "to tamper with and prevent the [Wests'] full zealous representation[.]" These issues of State Farm's litigation conduct, however, were presented to, and resolved by the state court in *West I* and, therefore, are barred by the doctrine of collateral estoppel.

### a.    <u>Ex Parte Contact - Expert Opinion Testimony - Notice of Motions</u>

The issue of State Farm's presentation of "expert opinion testimony" refers to arguments made by State Farm's attorney, Bradley J. Luck of Garlington, Lohn & Robinson, PLLP (Garlington Firm), in support of the dismissal of Count One (breach of contract) in *West I*.  *See* Counts Six and Eight, discussed infra.  In this litigation the Wests have asserted that Luck and the Garlington Firm represented State Farm only with respect to the UTPA claims advanced against State Farm, and that Matthew B. Hayhurst of Boone Karlberg, P.C. (Boone Firm) was solely responsible for representing State Farm with respect to Count One.  Therefore, the Wests contend Luck improperly provided the state court with his expert opinions in support of the dismissal of Count One.

The issue of State Farm's alleged failure to provide notice of motions to the Wests refers to State Farm's January 5, 2011 motion requesting dismissal of Counts Two (UTPA) and Four (punitive damages) in *West I*. The Wests assert that State Farm did not provide them with notice of that motion.

The foregoing two issues of alleged ex parte contact were raised in the Wests' post-judgment motion filed under Mont. R. Civ. P. 60(b)(6) which the state court resolved in its April 29, 2011 order. There the Wests complained that State Farm had "withheld notice of its Motion to Dismiss from the Plaintiffs until after [the court] agreed to dismiss[.]" Dkt. # 49-16 at 15. The court construed their argument as referring to State Farm's motion to dismiss filed on January 5, 2011. The court found the evidence of record, and State Farm's certificate of service attached to its motion sufficiently established that State Farm had served a copy of its January 5, 2011 motion to dismiss on the Wests. The court concluded the Wests had simply "slept upon their rights" by failing to respond to the motion.

In its April 29, 2011 order the state court also addressed the following arguments advanced by the Wests:

> (4) the Garlington Firm participated in discussions on a motion with respect to Count One, violating the undefined "Abeyance Agreement;" (5) the Garlington Firm purposefully concealed from the Court its participation in Count One and deceived the Court with a request to dismiss Counts Two

and Four; (6) State Farm did not tell the Court of their breach of the undefined Abeyance Agreement[.]

Dkt. # 49-16 at 15-16. The state court noted that the Wests had not cited to any authority precluding State Farm from having its attorneys in both the Garlington Firm and the Boone Firm present arguments on behalf of State Farm relative to the motion to dismiss Count One. The court further found there existed no evidence of any purported "Abeyance Agreement" and, thus, no factual basis for the Wests' arguments.

Next, the state court found no evidence that the Garlington Firm concealed from the court its participation in the case relative to Count One, or that it had deceived the court through State Farm's motion requesting dismissal of Counts Two and Four. Instead, the court found State Farm had the right to have the Garlington Firm represent it relative to Count One, and that the Garlington Firm openly provided such representation on the record in the case. Additionally, the court found the Garlington Firm was identified as State Farm's counsel on the face of State Farm's January 5, 2011 motion requesting dismissal of Counts Two and Four.

The doctrine of collateral estoppel, as discussed, operates to bar the Wests from prosecuting a UTPA claim based upon the alleged ex parte conduct.

### b.    Sexual Assault/Abuse

The issue of whether State Farm was permitted to inquire as to Sarah West's alleged prior sexual abuse was expressly presented to, and resolved by the state court in *West I*. By order entered September 1, 2010, the state court ruled that State Farm may properly cross examine any physician relative to the cause of Sarah's injuries, including whether her prior sexual abuse was a causal factor. Dkt. # 72-1 at 17-19.[11] Specifically, the state court concluded State Farm could explore Sarah's "pre-existing conditions, including sexual abuse, that instead caused or contributed to" Sarah's damages. Dkt. # 72-1 at 19. The referenced September 1, 2010 order is final by virtue of the January 24, 2011 final judgment which the Wests did not appeal. Therefore, this factual predicate issue is barred by collateral estoppel.

### c.    Attacking Wests' Counsel - Zealous Representation

The Wests allege State Farm engaged in conduct "attacking the [Wests'] counsel, to tamper with and prevent the [Wests'] full zealous representation[.]"

---

[11] On June 17, 2011, State Farm filed a Third Motion for Judicial Notice requesting the Court take judicial notice of state court documents filed in *West I*, including this September 1, 2010 order. The Court hereby grants State Farm's motion without the benefit of a response from the Wests because the Court concludes there is no legitimate basis for opposing the motion, and judicial notice of the state court documents is appropriate under Fed. R. Evid. 201.

The context of these allegations indicate the Wests are again referring to State Farm's conduct during the course of the litigation in *West I*.

The Court finds that these potentially new issues of State Farm's litigation conduct are so related to the subject matter of *West I*, and relevant to the issues adjudicated in *West I* that they could have been raised during the course of the litigation in *West I*. Specifically, the Wests raised other issues of State Farm's litigation conduct it their post-judgment Rule 60(b)(6) motion, and these new issues could also have been raised in that motion. Furthermore, the issues are so intertwined with the Wests' Rule 60(b)(6) arguments and the state court's April 29, 2011 order that this Court would have to rehear those previously resolved issues in order to resolve the present allegations of attacks which impeded counsel's zealous representation. The issues are barred by collateral estoppel.

### 5.    Count Six

Count Six of the Wests' proposed Amended Complaint alleges State Farm is liable for "Fraud." The factual allegations set forth in support of the fraud claim are as follows:

> [State Farm] fraudulently withheld information about the [Wests'] insurance coverage, fraudulently presented expert testimony regarding the requirement of a Motion to Dismiss With Prejudice, fraudulent presentation of [State Farm's] duties under the bifurcation agreement, fraudulent presentation to the State District Court regarding [the Wests'] Federal Court filing, and [...]

fraudulently presented opinion evidence as to dismissals with or without
prejudice that clearly resulted in prejudice to the [Wests] that was not
supported by case or statutory law.

Dkt. # 67-1 at 9-10.

With respect to State Farm's alleged fraudulent withholding of coverage

information, the Wests were permitted to, and could have advanced any claim of

fraud against State Farm in *West I* under the UTPA at Mont. Code Ann. § 33-18-

242(3). Section 33-18-242(3) permits an "insured who has suffered damages as a

result of the handling of an insurance claim" to bring an action against an insurer

"for fraud[.]" Because the Wests could have brought this claim in *West I*, for the

reasons discussed above it is barred under the doctrine of res judicata.

The Wests also cannot relitigate issues regarding State Farm's duties under

the alleged "bifurcation agreement," or its conduct in failing to advise the state

court of the Wests' federal court filing. The state court identified those same

allegations in the Wests' Rule 60(b)(6) motion as follows:

> (6) State Farm did not tell the Court of their breach of the undefined
> Abeyance Agreement; (7) the Abeyance Agreement required the Plaintiff to
> revive their bad faith claim within 60 days of completion of the breach of
> contract claim; (8) Plaintiffs filed their federal bad faith claim within 60
> days of the dismissal of Count One; (9) State Farm deceived this Court in
> not telling this Court that Plaintiffs did timely file their bad faith claims in
> federal Court[.]

Dkt. # 49-16 at 15-16. The court found there existed no evidence of any purported "Abeyance Agreement" or bifurcation agreement and, thus, no factual basis for any asserted violations of the agreement. State Farm's alleged duties under the agreement are intertwined with the state court's finding that no such agreement existed. Thus, the issue of State Farm's duties under the bifurcation agreement is barred by collateral estoppel.

With respect to State Farm's alleged fraudulent representation about the Wests' filing in federal court, the state court's conclusions relative to that matter are controlling. The state court found no evidence of a breach of the parties' June 5, 2009 stipulation regarding bifurcation. Neither the stipulation, nor the court's June 9, 2009 order of bifurcation contained any provision "regarding pursuing a bad faith claim in federal court within 60 days after final judgment on Count One." Dkt. # 49-16 at 16-17. Rather, regarding the Wests' ability to "revive their bad faith claims within 60 days[,]" the court noted that both the stipulation and the order required the Wests to request "[a] revised Scheduling Order" in order to pursue those claims further. Therefore, the court concluded that the Wests' arguments asserting that (a) they filed their bad faith claims in federal court within 60 days of the resolution of Count One, and (b) State Farm failed to advise the

court that the Wests timely filed their bad faith claims in federal court, were both irrelevant assertions.

Finally, the issues regarding State Farm's alleged fraudulent presentation of expert witness opinion testimony in *West I* relative to the dismissal of Count One (breach of contract) were previously resolved. Specifically, the state court concluded that "[t]here is no evidence that the Garlington Firm concealed or deceived the Court with participation in Count One[.] [...] To the contrary, State Farm had the right to have the Garlington Firm represent it with respect to Count One and provided such representation <u>on the record</u>." Dkt. #49-16 at 17 (emphasis added). Again, these predicate issues of fraud are barred by collateral estoppel.

The Court is aware that under Montana law a court in equity may set aside a judgment procured through fraud. *See Castonguay v. Estate of Polson*, 122 P.3d 1208, 1210 (Mont. 2005) (citing *Clark v. Clark*, 210 P. 93, 94 (Mont. 1922)). But the fraud must be "extrinsic or collateral to the matter tried by the court[.]" *Id.* Extrinsic fraud is that which "prevent[ed] the unsuccessful party from having a trial or from presenting his case fully[.]" *Id.*, 122 P.3d at 1211 (quoting *Clark*, 210 P. at 95). A matter of fraud is extrinsic if it is collateral to the proceedings such that "the court, by definition, could not have decided" the matter, i.e. where the

fraudulent matter prevented the court from even considering that very fraudulent matter. *Id*.

In contrast, intrinsic fraud is "fraud in the matter on which the decree is rendered." *Castonguay*, 122 P.3d at 1211 (quoting *Clark*, 210 P. at 94). It is a "matter [that] has already been tried or was so in issue that it might have been tried[.]" *Id*. Intrinsic "fraud between the parties, such as perjured testimony at trial, does not rise to the level of fraud upon the court." *Id*.

The Wests' proposed claim for fraud does not reference any matter of extrinsic fraud as defined in *Castonguay*. All of the predicate facts in support of the claim are matters of intrinsic fraud — matters of fraudulent conduct that occurred on the record before the state court in *West I*. The predicate facts do not refer to any fraudulent conduct that prevented the state court from considering the very fraudulent conduct alleged in Wests' proposed pleading. Because the Wests do not allege extrinsic fraud, Count Six is subject to dismissal.

### 6.  <u>Count Seven</u>

Count Seven of the Wests' proposed Amended Complaint is a one-paragraph claim for "Punitive Damages" based in whole on the numerous other causes of action set forth — all of which are subject to dismissal. Consequently, Count Seven is also subject to dismissal.

### 7. **Count Eight**

Count Eight of the Wests' proposed Amended Complaint is titled "Breach of Contract." They allege State Farm "entered into a contract with the [Wests] regarding bifurcation of their claims" in *West I*. The Wests contend the agreement suspended "all activity and legal representation of their bad faith claims[,]" but State Farm breached that agreement when it "presented expert opinion witness testimony" in *West I*. The Wests allege that State Farm's "bad faith counsel participated in and provided opinion testimony" in violation of the "bifurcation agreement."

The Wests previously presented arguments to the state court regarding the alleged "bifurcation agreement" or "abeyance agreement" in their Rule 60(b)(6) motion. In its April 29, 2011 order the state court identified the following arguments asserted by the Wests:

> (1) State Farm violated the *Order of Bifurcation* because it "actively asserted its position on Counts Two and Four, in violation of the Stipulated Bifurcation;" [... and] (4) the Garlington Firm participated in discussions on a motion with respect to Count One, violating the undefined "Abeyance Agreement;"

Dkt. # 49-16 at 15-16. The state court rejected the Wests' ground for relief finding that they had not identified anything in the record indicating that State Farm had violated the "Stipulated Bifurcation" as alleged. Also, the state court

concluded State Farm was not barred from having both the Garlington Firm and the Boone Firm present arguments to the court.  Significantly, the court further found there existed no evidence of any purported "Abeyance Agreement." Consequently, the predicate issue of the "bifurcation agreement" and State Farm's alleged conduct in violation of the agreement is barred by collateral estoppel.

## B.  Motion to Compel

After conducting a preliminary pretrial conference on March 3, 2011, the Court entered a Fed. R. Civ. P. 16(b) scheduling order.  Rule 16 requires that "[t]he scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions."  Fed. R. Civ. P. 16(b)(3)(A).  Accordingly, the referenced order imposed certain deadlines as follows:

> Discovery in this action shall be stayed pending the Court's resolution of Defendants' motion(s) to dismiss, with the exception of the following limited discovery:
>
> On or before **March 11, 2011,** Plaintiffs may serve an appropriate interrogatory on Defendants for the limited purpose of:  (1) seeking the identification of the individuals who Plaintiffs name as Defendants John Does A, B, and C in their Complaint, and (2) establishing the citizenship of each individual John Doe Defendant for purposes of analyzing diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a).

Deadline for Amending Pleadings:          April 21, 2011

Dkt. # 22 at 2.

Discovery was limited because of the legitimate concern raised by State Farm that this action is an improper attempt by the Wests to relitigate the *West I* action.  The Court stayed general discovery to alleviate the unnecessary expenditure of resources by both parties.  The Court did, however, permit limited discovery for the purpose of giving the Wests an opportunity to obtain the identity and states of citizenship of the fictitious "Doe Defendants" so the Wests could sustain their assertion that this Court possesses subject matter jurisdiction over this action based on diversity of citizenship under 28 U.S.C. § 1332(a).  The Court tailored the schedule to afford the Wests adequate time to serve their discovery and amend their Complaint by the April 21, 2011 deadline for amendments.

The Wests prepared discovery requests relative to the individuals they named as Defendants John Does A, B, and C.  Specifically, the two requests sought production of (1) State Farm's "entire claims file," and (2) the identity of every individual "that provided information, opinion, direction on this file including the underlying car wreck, underinsured claim, med-pay claim, and bad faith claim."  Dkt. # 63-1.  The Wests' requests were not served on State Farm until March 31, 2011 — twenty days after the March 11, 2011 deadline for service of the requests.  Dkt. # 63-1.

On May 2, 2011, State Farm responded to the discovery requests by interposing an objection that the requests were untimely, i.e. not in compliance with the March 11, 2011 discovery deadline imposed by the Court's scheduling order. State Farm also objected on the ground that the discovery requests were overly broad, i.e. beyond the scope of discovery permitted by the March 3, 2011 scheduling order.

On May 20, 2011, the Wests moved the Court for an order under Fed. R. Civ. P. 37(a)(3)(B), compelling State Farm to provide responses to their discovery requests. Dkt. # 55. State Farm opposes the motion based on its objections that the discovery requests are untimely and overly broad.

Discovery requests must be served in compliance with the discovery deadline imposed by the court. *Bishop v. Potter*, 2010 WL 2775332, *1 (D. Nev. 2010) (citing cases). And a court has discretion to deny a motion to compel discovery where the discovery requests at issue in the motion were served on the opposing party after the expiration of the discovery deadline imposed by the court. *Bishop*, 2010 WL 2775332, *1-2; *Cox v. Campos*, 2010 WL 3895070, *1 (S.D. Cal. 2010); *Christmas v. MERS*, 2010 WL 2695662, *2 (D. Nev. 2010). As noted above, the Wests' discovery requests were served on State Farm twenty days after the March 11, 2011 discovery deadline passed. The Wests offer no legitimate

reason for their dilatory service of the discovery requests. Therefore, the Court will sustain State Farm's objection to timeliness.

The record reflects the Wests have not been diligent in propounding discovery or in utilizing the information available to them to identify John Does A, B, and C. In its Preliminary Pretrial Statement filed on February 23, 2011, State Farm identified the following two State Farm employees who handled the Wests' claims: Ron Amen and Beth Corbin. Dkt. # 14 at 11. The Wests did not serve discovery requests specific to these individuals, and they did not timely amend their pleading to identify these individuals as defendants in this action.

Additionally, the Court has afforded the Wests significant latitude in their use of fictitious "John Doe" defendants. In this regard, there exists Ninth Circuit authority standing for the proposition that in an original federal action invoking diversity jurisdiction, 28 U.S.C. § 1332(a), a plaintiff's inclusion of fictitious defendants destroys that jurisdiction and renders the action subject to dismissal. *Garter-Bare Co. v. Munsingwear, Inc.*, 650 F.2d 975, 981 (9th Cir. 1981). The rationale being that complete diversity cannot exist if the identity and citizenship of some defendants, i.e. the "Does", are unknown. *See Fifty Associates v. Prudential Insurance Co. of America*, 446 F.2d 1187, 1191 (9th Cir 1970). By contrast, — and as a result of a 2002 amendment to 28 U.S.C. § 1441(a) — in

actions removed from state court on diversity grounds, the citizenship of fictitious defendants "shall be disregarded." 28 U.S.C. § 1441(a).

A more recent decision of the Ninth Circuit arguably calls this rule into question. *Lindley v. General Electric Co.*, 780 F.2d 797 (9th Cir. 1986), cert. denied 476 U.S. 1186 (1986). In *Lindley* — a removed action — the Ninth Circuit held that a California state law which extends the statute of limitations for Doe defendants named in the complaint is state substantive law that must be applied by a federal court siting in diversity. 780 F.2d at 799-81. Some district courts have extended the rationale of *Lindley* to an original federal action, concluding the use of fictitious defendants does not automatically destroy diversity. *See Hao v. Chen*, 2010 WL 3910165, *4 (N.D. Cal. 2010) (citing cases).

To accommodate the Wests, the Court deemed it appropriate to establish a deadline for amendment of the pleadings which allowed the Wests sufficient time to discover the identity of the fictitious defendants named in their Complaint. The Wests, however, chose not to take advantage of the opportunity by failing to comply with the March 11, 2011 discovery deadline and failing to submit an amended pleading by the April 21, 2011 deadline for filing amendments to the pleadings. Consequently, the Wests' motion to compel is denied.

In conjunction with their motion to compel, the Wests also move the Court to stay proceedings upon State Farm's motions to dismiss until State Farm provided answers to the disputed discovery requests. That motion is also properly denied.

## IV.  CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that the Wests' Motion to Compel, Motion to Amend Complaint, Motion to Stay, and their request that the undersigned United States Magistrate Judge be disqualified in this matter are DENIED.

IT IS FURTHER RECOMMENDED that State Farm's Motion to Dismiss for Lack of Subject Matter Jurisdiction be DENIED, and that State Farm's Motion to Dismiss Re: Statute of Limitations be DENIED as moot.

IT IS FURTHER RECOMMENDED that State Farm's Motion to Dismiss Re: Preclusion, Statutory Exclusivity, and Litigation Conduct be GRANTED, and this action be DISMISSED.

DATED this 28th day of June, 2011.

 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge